IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:09-cv-0031 (BSM) |
| | ) | |
| BOB L. HURT AND SUE R. HURT, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## UNITED STATES' PROPOSED JURY INSTRUCTIONS

The United States respectfully submits the following proposed jury instructions and general objections to the Defendants' proposed instructions.

## I.  PROPOSED INSTRUCTIONS

## PROPOSED INSTRUCTION NO. 1: NATURE OF CASE; BURDEN OF PROOF; DUTY OF JURY; CAUTIONARY

Ladies and Gentlemen: I will take a few moments now to give you some initial instructions about this case and about your duties as jurors. At the end of the trial I will give you further instructions. I may also give you instructions during the trial. Unless I specifically tell you otherwise, all such instructions–both those I give you now and those I give you later–are equally binding on you and must be followed.

You must leave your cell phone, PDA, Blackberry, Smartphone, I-phone and any other wireless communication devices in the jury room during the trial and may only use them during breaks. However, you are not allowed to have cell phones in the jury room during your deliberations. You may give the cell phone to the deputy clerk for safekeeping just before you start to deliberate. It will be returned to you when your deliberations are complete.

This is a civil case brought by the United States against Bob and Sue Hurt. The United States alleges that the Bob Hurt violated the federal Fair Housing Act by sexually harassing a number of his female tenants over an approximately ten-year period.  The United States also alleges that Defendant Sue Hurt is liable for Bob Hurt's conduct.

The Fair Housing Act is a law that makes it illegal for a landlord or manager to discriminate against tenants and potential tenants in connection with the rental of housing.  Sex discrimination, which includes sexual harassment, is one type of discrimination that is illegal under the Fair Housing Act.  It is also a violation of the Fair Housing Act to coerce, intimidate, threaten, or interfere with any person on account of their exercising or enjoying any right granted or protected by the Fair Housing Act.

The United States alleges that the Defendants in this case engaged in what is called a "pattern or practice" of sex discrimination, including sexual harassment, and of unlawful coercion, intimidation, threats, and interference against women at rental properties the Defendants owned and/or managed.  The United States also alleges that the Defendants' conduct constitutes a denial of rights granted by the Fair Housing Act to a group of persons.  The United States need not prove both a "pattern or practice" of discrimination and a "denial of rights to a group of persons" in order to prevail.  It may show either or both.

The defendants deny these allegations.

From the evidence you will decide what the facts are. You are entitled to consider that evidence in the light of your own observations and experiences in the affairs of life. You will then apply those facts to the law which I give you in these and in my other instructions, and in

that way reach your verdict. You are the sole judges of the facts; but you must follow the law as stated in my instructions, whether you agree with it or not.

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness says, or only part of it, or none of it.  In deciding what testimony to believe, consider the witnesses' intelligence, their opportunity to have seen or heard the things they testify about, their memories, any motives they may have for testifying a certain way, their manner while testifying, whether they said something different at an earlier time, the general reasonableness of their testimony and the extent to which their testimony is consistent with other evidence that you believe.  Do not allow sympathy or prejudice to influence you. The law demands of you a just verdict, unaffected by anything except the evidence, your common sense, and the law as I give it to you.  Your verdict depends on whether you find certain facts have been proved by the greater weight of the evidence.  To find that a fact or element has been proved by the greater weight, or preponderance, of the evidence, you must find that it is more likely true than not true.  It is determined by considering all of the evidence and deciding which evidence is more believable.

You have probably heard of the phrase "proof beyond a reasonable doubt."  That is a stricter standard which applies in criminal cases.  It does not apply in civil cases such as this. You should, therefore, put it out of your minds.

Finally, you should not take anything I may say or do during the trial as indicating what I think of the evidence or what I think your verdict should be.


AUTHORITY:   8TH CIR. PROPOSED CIVIL JURY INSTR. 1.01 (2010).

## PROPOSED INSTRUCTION NO. 2:
## PROHIBITED CONDUCT UNDER THE FAIR HOUSING ACT

The Fair Housing Act makes it unlawful to commit any one of the following acts:

1.      It is unlawful for a landlord to refuse to rent or otherwise to make a house or apartment unavailable because of the sex of an applicant or tenant.  The United States may show that the Defendants violated this provision of the Fair Housing Act by showing, for example, that Defendant Bob Hurt did any one of the following:

   a.      evicted a female tenant, at least in part, because she would not give in to his sexual advances;

   b.      engaged in sexual harassment such that a female tenant decided to move out of her dwelling or a female applicant decided not to rent a dwelling;

   c.      engaged in sexual harassment that otherwise made unavailable or denied a rental unit to a woman because of sex; or

   d.      engaged in unwanted sexual advances that were sufficiently severe or pervasive so as to interfere with or deprive a tenant of her right to use or enjoy her home.

2.      It is also unlawful for a landlord to impose different terms, conditions, or privileges related to the rental of a house or apartment because of sex, or create a hostile environment by sexual harassment.  The United States may show that the Defendants violated this provision of the Fair Housing Act by showing, for example, that Defendant Bob Hurt did any one of the following:

   a.      sexually harassed any female tenant or applicant; or

   b.      entered the home or apartment of any female tenant without notice because of her sex and in a manner that was deliberate and unwelcome;

    c.       gave or offered to give gifts to any female tenant because of her sex, with the implication that the gifts were linked to past or future sexual activity, in a manner that was deliberate and unwelcome;

    d.       evicted any female tenant, or threatened to evict any female tenant, at least in part because she would not give in to his sexual advances;

    e.       denied or limited services or facilities, such as repairs or maintenance, in connection with the rental of a dwelling because a woman failed or refused to provide sexual favors; or

    f.       conditioned housing benefits, explicitly or implicitly, on sexual favors.

3.      It is also unlawful for a landlord to make statements with respect to the rental of a house or apartment that indicate any preference, limitation, or discrimination based on sex, or that indicate an intent to make such a preference, limitation or discrimination.  The United States may prove that the Defendants violated this section of the Fair Housing Act by showing, for example, that Defendant Bob Hurt did any one of the following:

    a.       made an unwelcome request or demand for sexual favors or other sexual conduct with any female tenant or applicant because of her sex;

    b.       made an unwelcome comment about sex to any female tenant or applicant because of her sex that was deliberate and implied a preference, limitation or discrimination based on sex; or

    c.       made any statement, written or oral, that indicates, or indicates an intent to make, any preference, limitation, or discrimination based on sex.

4.      It is also unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of rights granted or protected by the Fair Housing Act.  The United States may prove that the Defendants violated this section of the Fair Housing Act by showing, for example, that Defendant Bob Hurt did any one of the following:

    a.      threatened to hurt or otherwise cause harm to an actual or prospective female tenant (or someone close to her) if she reported his unwelcome and offensive sexual conduct to anyone;

    b.      intimidated an actual or prospective female tenant who reported his unwelcome and offensive sexual conduct;

    c.      interfered with an actual or prospective female tenant's enjoyment of her dwelling by engaging in unwelcome and offensive sexual conduct or by making unwelcome and offensive sexual remarks; or

    d.      evicted any female tenant, or threatened to evict any female tenant, at least in part because she would not give in to his sexual advances.

To establish that the Defendants violated the Fair Housing Act by engaging in sexual harassment, there is no requirement that the female tenant or applicant give in to the unwelcome sexual demands.  However, a female tenant who does give in to unwelcome sexual demands does not lose her right to be protected by the Fair Housing Act, nor does she lose her right to be compensated for her damages, if any.

Each of these acts that I have described for you in paragraphs 1 through 4 above is a separate and independent violation of the Fair Housing Act.  If you find that the United States has shown that Defendant Bob Hurt engaged in one or more of these acts by the preponderance of the evidence, you must find that the United States has shown that Defendants Bob Hurt and Sue Hurt, LLC committed a discriminatory housing practice.


AUTHORITY:

    24 C.F.R. §§ 100.50(b)(2) and (3); 100.60(b)(5); 100.65(a); 100.70(b); 100.75(a) and (b); and 100.400(c)(2).  (HUD Regulations).

42 U.S.C. § 3604(a); Quigley  v. Winter, 598 F.3d 938 (8th Cir. 2010); Honce v. Vigil, 1 F.3d 1085, 1090 (10th Cir. 1993); Woods v. Foster, 884 F. Supp. 1169, 1174-75 (N.D. Ill. 1995) (collecting cases); Shellhammer v. Lewallen, 1 FAIR HOUS.- FAIR LEND. (P-H) ¶ 15,472, at 136-37 (W.D. Ohio Nov. 22, 1983), aff'd, 770 F.2d 167 (6th Cir. 1985) (per curiam) (unpublished opinion);

42 U.S.C. § 3604(b); Quigley  v. Winter, 598 F.3d 938 (8th Cir. 2010); Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998); Burlington Indus. v. Ellerth, 524 U.S. 742, 751-54 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 786-88 (1998); Bales v. Wal-Mart Stores, Inc., 143 F.3d 1103, 1106-09 (8th Cir. 1998); Howard v. Burns Bros., Inc., 149 F.3d 835, 838-41 (8th Cir. 1998); Rorie v. United Parcel Serv., Inc., 151 F.3d 757, 762 (8th Cir. 1998); Hathaway v. Runyon, 132 F.3d 1214, 1222 (8th Cir. 1997); Hall v. Gus Constr. Co., 842 F.2d 1010, 1013-15 (8th Cir. 1988);

42 U.S.C. § 3604(c); Quigley  v. Winter, 598 F.3d 938 (8th Cir. 2010); Jancik v. HUD, 44 F.3d 553, 556 (7th Cir. 1995); Soules v. HUD, 967 F.2d 817, 824 (2d Cir. 1992); Harris v. Itzhaki, 183 F.3d 1043, 1054-55 (9th Cir. 1999); and

42 U.S.C. § 3617; Quigley  v. Winter, 598 F.3d 938 (8th Cir. 2010); Neudecker v. Boisclair Corp., 351 F.3d 361, 363-64 (8th Cir. 2003); Krueger v. Cuomo, 115 F.3d 487, 491-92 (7th Cir. 1997); United States v. City of Hayward, 36 F.3d 832, 836 (9th Cir. 1994) (FHA), cert. denied, 516 U.S. 813 (1995).

**PROPOSED INSTRUCTION NO. 3: SEXUAL HARASSMENT – GENERAL**

This case concerns the Fair Housing Act, a federal law that, among other things, prohibits a landlord from sexually harassing persons in connection with the sale or rental of housing.  In this case, the United States contends that Defendant Bob Hurt sexually harassed a number of female tenants at properties he and Sue Hurt owned.  You must decide whether each of these women was subjected to unlawful sexual harassment.

The term "sexual harassment" in this case refers to conduct by a landlord or rental manager toward his tenants that includes sexual advances, requests for sexual favors, other physical conduct of a sexual nature, and sexually suggestive comments that are unwelcome and are taken or made because of a person's sex.

The United States can show that the Defendant Bob Hurt engaged in illegal sexual harassment in one of two ways.  First, it may show that Defendant Bob Hurt explicitly or implicitly demanded sexual favors in exchange for rent or explicitly or implicitly conditioned housing benefits, including tenancy, continued tenancy, maintenance services, or any of the terms, conditions, or privileges of tenancy on giving sexual favors.  This is known as "quid pro quo" harassment.

Second, it may show that the Defendant Bob Hurt created what is called a "hostile environment" for women while they lived at one of the Defendants' properties.  To establish a hostile environment, the United States must show that Bob Hurt's conduct was sufficiently severe or pervasive as to interfere with his victims' right to use or enjoy their homes.

The United States need not prove that any woman experienced both "quid pro quo" and "hostile environment" sexual harassment.  It may prove either or both.  These terms are explained in more detail in the following two instructions.

AUTHORITY:

Quigley  v. Winter, 598 F.3d 938 (8th Cir. 2010); Burlington Industries v. Ellerth, 524 U.S. 742, 751 (1998);  Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998); Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998); Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986); Krueger v. Cuomo, 115 F.3d 487, 491 (7th Cir. 1997) (citing DiCenso v. Cisneros, 96 F.3d 1004, 1008 (7th Cir. 1996)); Honce v. Vigil, 1 F.3d 1085, 1089 (10th Cir. 1993); Smith v. Meyer Builders, No. C-1-03-729, 2006 WL 543706, at *3-6 (S.D. Ohio Mar. 3, 2006) (Title VII); Walker v. Crawford, No. 5:97-CV-1033, 1999 WL 33917846, at *6-8 (N.D. Ohio Sept. 16, 1999); Grieger v. Sheets, No. 87 C 6567, 1989 WL 38707, at *2-5 (N.D. Ill. Apr. 10, 1989); Shellhammer v. Lewallen, 1 FAIR HOUS.-FAIR LEND. (P-H) ¶ 15,472, at 136-37 (W.D. Ohio Nov. 22, 1983), aff'd, 770 F.2d 167 (6th Cir. 1985) (per curiam) (unpublished opinion); HUD v. Kogut, 2A FAIR HOUS.-FAIR LEND. (P-H) ¶ 25,100, at 25,900 (Apr. 17, 1995).

**PROPOSED INSTRUCTION NO. 4: QUID PRO QUO SEXUAL HARASSMENT**

The United States may show that the Defendants committed "Quid Pro Quo" sexual harassment against any of the women who the United States alleges were sexually harassed by showing that Defendant Bob Hurt did each of the following things:

*First*, that Bob Hurt– even one time – explicitly or implicitly demanded or offered to accept sexual favors (a) in place of rent, (b) as a condition for allowing a female tenant to live in the apartment, or (c) as a condition for granting a female tenant some benefit of her tenancy, such as repairs or maintenance; and

*Second*, that Bob Hurt's explicit or implicit demand or offer for sexual favors was based on the woman's sex; that is, the conduct would not have occurred but for the fact that the tenant was a woman; and

*Third*, that Bob Hurt's conduct was unwelcome; and

*Fourth*, either (a) that the woman submitted to the unwelcome sexual advances or demand for a sexual favor in exchange for rent, permission to live in or remain in the apartment or for some benefit of tenancy, such as repairs or maintenance; or (b) that the woman refused to submit to the sexual advance or demand, and, as a result, suffered some loss of a tangible housing benefit.  Such tangible loss may include, for example, a Defendant terminating or attempting to terminate her tenancy or withholding repairs or maintenance.

A single incident involving an explicit or implicit offer to condition housing benefits on sexual favors is sufficient to establish "quid pro quo" harassment.  If you find that the United States has proven that it is more likely than not that Bob Hurt engaged in "quid pro quo" harassment of a particular woman, then you must find that she is a victim of the Defendants' discrimination.

AUTHORITY:

Quigley  v. Winter, 598 F.3d 938 (8th Cir. 2010); Burlington Industries v. Ellerth, 524 U.S. 742, 753-54 (1998);  Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998); Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998); Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986); Bowman v. Shawnee State Univ., 220 F.3d 456, 461 (6th Cir. 2000) (Title VII); Krueger v. Cuomo 115 F.3d 487, 491-92 (7th Cir. 1997); Grieger v. Sheets (II) 2 FAIR HOUS. - FAIR LEND. (P-H) ¶ 15,605, at 16,067, 16,070 (N.D. Ill. Apr. 7, 1989); Grieger v. Sheets (I) 689 F. Supp. 835, 836, 840-41 (N.D. Ill. 1988); Shellhammer v. Lewallen, 1 FAIR HOUS.-FAIR LENDING (P-H) ¶ 15,742, at 137 (W.D. Ohio Nov. 22, 1983), aff'd, 770 F.2d 167 (6th Cir. 1985) (per curiam) (unpublished opinion); HUD v. Kogut, 2A FAIR HOUS.-FAIR LENDING (P-H) ¶ 25,100, at 25,900 (Apr. 17, 1995).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 5:**
**HOSTILE ENVIRONMENT SEXUAL HARASSMENT**

Alternatively, the United States may show that the Defendants engaged in hostile-environment sexual harassment against any of the women who the United States alleges were sexually harassed.  The United States needs to show that the Defendant Bob Hurt did the following things:

*First*, that Bob Hurt subjected the woman to verbal or physical sexual advances, requests for sexual favors, sexually suggestive comments, and/or other verbal or physical conduct of a sexual nature; and

*Second*, that Bob Hurt's sexual advances, requests for sexual favors, sexually suggestive comments, or other conduct of a sexual nature was based on the woman's sex; that is, the conduct would not have occurred but for the fact that the tenant was a woman; and

*Third*, that Bob Hurt's conduct was unwelcome; and

*Fourth*, that the conduct was sufficiently severe or pervasive that a reasonable person in the woman's position would have found that the harassment unreasonably interfered with the use, occupancy, and enjoyment of the house or apartment or created a hostile or offensive housing environment for her; and

*Fifth*, that the woman believed that the harassment unreasonably interfered with her use, occupancy, and enjoyment of her house or apartment or created a hostile or offensive housing environment for her.

12

If you find that the United States has shown that it is more likely than not that Bob Hurt created a hostile environment with respect to a particular woman, then you must find that she is a victim of the Defendants' discrimination.

AUTHORITY:

Quigley v. Winter, 598 F.3d 938 (8th Cir. 2010); Burlington Industries v. Ellerth, 524 U.S. 742, 752-54 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 786-88 (1998); Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998) Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986); Thornton v. Federal Express Corp., 530 F.3d 451, 455-56 (6th Cir. 2008) (Title VII); Fenton v. HiSAN, Inc., 174 F.3d 827, 829-30 (6th Cir. 1999) (using federal precedent to interpret Ohio law); Abeita v. Transamerica Mailings, Inc., 159 F.3d 246, 250-52 (6th Cir. 1998) (Title VII); DiCenso v. Cisneros, 96 F.3d 1004, 1008-09 (7th Cir. 1996); Honce v. Vigil, 1 F.3d 1085, 1090 (10th Cir. 1993); Robbins v. Am. Preferred Mgmt. Co., Inc., 2007 WL 2728746 at *9 (W.D. Mich. Sept. 17, 2007); Smith v. Glenny Glass Co., Inc., 2007 WL 1202713 at *6 (S.D. Ohio April 20, 2007)  (Title VII); Adams v. Ample Industries, Inc., 2006 WL 3097185 at *4-6 (S.D. Ohio October 30, 2006) (Title VII); Smith v. Meyer Builders, No. C-1-03-729, 2006 WL 543706, at *3-6 (S.D. Ohio Mar. 3, 2006) (Title VII); Walker v. Crawford, No. 5:97-CV-1033, 1999 WL 33917846, at *7 (N.D. Ohio Sept. 16, 1999); Williams v. Poretsky Mgmt., Inc., 955 F. Supp. 490, 496 (D. Md. 1996); Grieger v. Sheets, No. 87 C 6567, 1989 WL 38707, at *2-3 (N.D. Ill. Apr. 10, 1989); Shellhammer v. Lewallen, 1 FAIR HOUS.- FAIR LEND. (P-H) ¶ 15,472, at 136-36 (W.D. Ohio Nov. 22, 1983), aff'd, 770 F.2d 167 (6th Cir. 1985) (per curiam) (unpublished opinion).

## PROPOSED INSTRUCTION NO. 6:
## TOTALITY OF THE CIRCUMSTANCES

In determining whether the allegedly sexually harassing conduct constitutes hostile environment sexual harassment, you should consider the totality of the circumstances.

The factors you should take into account in examining the totality of the circumstances include the frequency of the offensive conduct; the severity of the offensive conduct; whether the comments or conduct were specifically directed at the alleged victim as opposed to general statements; whether the conduct was physically harmful, threatening or humiliating, or a mere offensive utterance; and how the Defendants' conduct affected the victim's use and enjoyment of her rental house or apartment.

The more severe the offensive conduct, the less frequently it needs to occur to create a hostile housing environment.  A single incident, if severe enough, can create a hostile environment.  Alternatively, the more frequent the episodes of offensive conduct, the less severe they need to be to create a hostile environment.  It is not necessary to find physical touching to find a hostile housing environment.  Verbal conduct alone can be basis of a successful hostile housing environment claim.  Nor is it necessary to find that offensive comments or conduct caused psychological injury to the victim to find a hostile housing environment.

AUTHORITY:

Harris v. Forklift Sys., 510 U.S. 17, 23 (1993); Abeita v. Transamerica Mailings, Inc., 159 F.3d 246, 250-52 (6 th Cir. 1998) (Title VII); Black v. Zaring Homes, Inc., 104 F.3d 822, 825-26 (6th Cir. 1997) (Title VII); Ellison v. Brady, 924 F.2d 872, 878-79 (9th Cir. 1991); King v. Bd. of Regents, 898 F.2d 533, 537 (7th Cir. 1990); Huddleston v. Roger Dean Chevrolet, 845 F.2d 900, 905 (11th Cir. 1988); Smith v. Meyer Builders, 2006 WL 543706 at *4-6 (S.D. Ohio)

(Mar. 3, 2006) (Title VII); <u>Beliveau</u> v. <u>Caras</u>, 873 F. Supp. 1393, 1398 (C.D. Cal. 1995); <u>Canada</u> v. <u>Boyd Group, Inc.</u>, 809 F. Supp. 771, 776 (D. Nev. 1992).

## PROPOSED INSTRUCTION NO. 7:
## PATTERN OR PRACTICE OF DISCRIMINATION

You must also determine whether the Defendants have engaged in a pattern or practice of sexually harassing women in violation of the Fair Housing Act.

To prove that the Defendants engaged in a pattern or practice of sexual harassment, the United States must show that it is more likely than not that it was Defendant Bob Hurt's regular practice, or standard operating procedure to harass women because of their sex in connection with the rental of housing. The United States must prove that the sexual harassment or sexual discrimination was not just an isolated event or an accidental, unintentional occurrence, but rather that sexual harassment was a repeated action by or a regular practice of Defendant Bob Hurt.

The United States can do this by showing a series of incidents of sexual harassment involving women who lived in or applied to live in the Defendants' rental housing. There is no required minimum number of incidents that must be proved in order to show the existence of a pattern or practice of discrimination. Even only a few incidents may indicate that sexual harassment discrimination was Defendant Bob Hurt's regular or standard way of managing the rental properties owned by Defendant Bob Hurt and Defendant Sue Hurt. The United States does <u>not</u> need to show that Defendant Bob Hurt sexually harassed or otherwise discriminated against <u>all</u> women who applied for or lived in the Defendants' rental units. The United States have to show that Defendant Bob Hurt <u>always</u> harassed or discriminated against women in exactly the same manner to establish a pattern or practice of sexual harassment.

16

Finally, in determining whether a pattern or practice of discrimination exists, you must view the evidence as a whole, rather than examining each of the incidents separately as if they were unrelated parts.

AUTHORITY:

42 U.S.C. §§ 3604, 3614; Int'l Brotherhood of Teamsters v. United States, 431 U.S. 324, 336 n.16, 360-62 (1977) (Title VII); United States v. Big D Enters., Inc., 184 F.3d 924, 931 (8th Cir. 1999), cert. denied, 529 U.S. 1018 (2000); United States v. Balistrieri, 981 F.2d 916, 929-30 (7th Cir. 1992), cert. denied, 510 U.S. 812 (1993); United States v. Di Mucci, 879 F.2d 1488, 1497 n.11 (7th Cir. 1989); United States v. Pelzer Realty Co., Inc., 484 F.2d 438, 445 (5th Cir. 1973), cert. denied, 416 U.S. 936 (1974); United States v. West Peachtree Tenth Corp., 437 F.2d 221, 227 (5th Cir. 1971); United States v. Matusoff Rental Co., 494 F. Supp. 2d 740, 747 (S.D. Ohio 2007); United States v. Harrison, 188 F. Supp. 2d 77, 81 (D. Mass. 2002); United States v. Garden Homes Mgmt. Corp., 156 F. Supp. 2d 413, 420-23 (D.N.J. 2001); Walker v. Crawford, No. 5:97-CV-1033, 1999 WL 33917846, at *8-9 (N.D. Ohio Sept. 16, 1999); United States v. Yonkers Bd. of Educ., 624 F. Supp. 1276, 1293-94 (S.D.N.Y. 1985), aff'd, 837 F.2d 1181 (2nd Cir. 1987), cert. denied, 486 U.S. 1055 (1988); Davis v. The Mansards, 597 F. Supp. 334, 344-45 (N.D. Ind. 1984); United States v. City of Parma, 494 F. Supp. 1049, 1095 (N.D. Ohio 1980), aff'd as modified, 661 F.2d 562 (6th Cir. 1981), cert. denied, 456 U.S. 926 (1982); United States v. Hous. Auth. of City of Chickasaw, 504 F. Supp. 716, 727 (S.D. Ala. 1980); United States v. Real Estate Dev. Corp., 347 F. Supp. 776, 783-84 (N.D. Miss. 1972); United States v. Mintzes, 304 F. Supp. 1305, 1314-15 (D. Md. 1969).

## PROPOSED INSTRUCTION NO. 8:
## DENIAL OF RIGHTS TO A GROUP OF PERSONS

In addition to alleging that Defendants engaged in a pattern or practice of unlawful sexual harassment or sexual discrimination, the United States has separately alleged that the Defendants have denied rights protected by the Fair Housing Act to a group of persons by sexually harassing or otherwise discriminating against numerous women based on sex, thereby denying them the right to housing of their own choice free from discrimination.

To succeed on this claim, the United States must prove that it is more likely than not that the Defendants' harassing or discriminatory conduct affected more than a single individual in connection with the rental of housing. The United States must show that the sexual harassment or sexual discrimination affected a group of similarly-situated individuals, that is, more than one individual woman.


AUTHORITY:

42 U.S.C. § 3614; United States v. Hunter, 459 F.2d 205, 216-18 (4th Cir. 1972), cert. denied, 409 U.S. 934 (1972); United States v. Incorporated Village of Island Park, 888 F. Supp. 419, 449 (E.D.N.Y. 1995); United States v. City of Parma, 494 F. Supp. 1049, 1095 (N.D. Ohio 1980), aff'd as modified, 661 F.2d 562 (6th Cir. 1981), cert. denied, 456 U.S. 926 (1982); United States v. Northside Realty Assocs., 474 F.2d 1164, 1168 (5th Cir. 1973), and 501 F.2d 181, 182 (5th Cir. 1974); United States v. Bob Lawrence Realty, 327 F. Supp. 487, 494 (N.D. Ga. 1971).

**PROPOSED INSTRUCTION NO. 9:**
**NO NEED TO FILE ADMINISTRATIVE COMPLAINT**

There is no requirement for a woman who believes that she has been subjected to housing

discrimination by a landlord to complain to an administrative agency, such as the Department of

Housing and Urban Development, a local Housing Authority, a state or local Human Relations

Department, or any other agency.  The United States may seek damages on behalf of a woman

who the United States maintains has been sexually harassed in violation of the Fair Housing Act,

regardless of whether that woman previously filed a discrimination complaint.


AUTHORITY:

42 U.S.C. §§ 3613, 3614; Walker v. Crawford, No. 5:97-CV-1033, 1999 WL 33917846,
at *9-10 (N.D. Ohio Sept. 16, 1999).

## PROPOSED INSTRUCTION NO. 10: SUE HURT'S LIABILITY

Certain individuals may, at times, act through their agents or employees. For example, any agent or employee of a corporation may bind the corporation by his conduct or statements made while acting within the scope of the authority delegated to him by the corporation, or within the scope of his duties as an employee of the corporation. The United States has alleged that Sue Hurt acted through Bob Hurt, who served as her agent. As the manager of his and Sue Hurt's rental properties, Bob Hurt's actions while managing the trailer parks bind the owner, Sue Hurt. Similarly, as an agent of the owner, Sue Hurt, Bob Hurt's alleged discriminatory actions while managing the trailer parks make her liable for his conduct.

To impose liability on Sue Hurt, the United States need only establish the existence of an agency relationship, in this case (1) a manifestation by Sue Hurt that Bob Hurt, as her agent, shall act for her; and (2) that Bob Hurt accepted that responsibility, and was willing to follow Sue Hurt's directions with respect to the trailer parks.

Therefore, if you conclude that (1) Defendant Bob Hurt was Sue Hurt's agent; (2) that he managed the properties, at least in part, on Sue Hurt's behalf; and (3) that he committed discriminatory housing practices, Sue Hurt will also be liable for his discriminatory conduct.

AUTHORITY:

BE&K Constr. Co. v. United Bhd. of Carpenters and Joiners of America, 90 F.3d 1318, 1326 (8th Cir. 1996) (quoting Restatement (Second) of Agency § 1 cmt. b (1985)). See also Meyer v. Holley, 537 U.S. 280, 286-91 (2003); Alexander v. Riga, 208 F.3d 419, 433 (3d Cir. 2000), cert. denied, 531 U.S. 1069 (2001); Harris v. Itzhaki, 183 F.3d 1043, 1054 (9th Cir. 1999); United States v. Balistrieri, 981 F.2d 916, 930 (7th Cir. 1992); Walker v. Crigler, 976 F.2d 900, 903-05 (4th Cir. 1992); Heights Cmty. Cong. v. Hilltop Realty, Inc., 774 F.2d 135, 141 (6th Cir. 1985); Green v. Century 21, 740 F.2d 460, 465 (6th Cir. 1984); Marr v. Rife, 503 F.2d

735, 740-42 (6th Cir. 1974); <u>Reeves v. Rose</u>, 108 F. Supp. 2d 720, 727 n. 8 (E.D. Mich. 2000). <u>See</u> <u>also</u>, <u>Faragher</u> v. <u>City of Boca Raton</u>, 524 U.S. 775, 807 (1998) (Title VII); <u>Williams</u> v. <u>Gen. Motors Corp.</u>, 187 F.3d 553, 560 (6th Cir. 1999) (Title VII).

**PROPOSED INSTRUCTION NO. 11: DAMAGES GENERALLY**

In order to prevail on its claims, the United States must prove that it is more likely than not that the Defendants either engaged in a pattern or practice of sexual harassment or denied rights to a group of persons based on sex.  If you decide that Defendants violated the Fair Housing Act by engaging in a pattern or practice of sexual harassment or by denying rights to a group of persons based on sex, you must then decide which women were affected by Defendants' actions.  If you determine, by a preponderance of the evidence, that the Defendants either engaged in "quid pro quo" sexual harassment against or created a "hostile housing environment" for a specific woman identified by the United States, then you must find that the woman is a victim of the Defendants' discriminatory conduct.

Under the Fair Housing Act, the United States has the right to seek monetary relief on behalf of persons injured by illegal discrimination.  If you find the United States has proven the Defendants sexually harassed or otherwise discriminated against any or all of the nine (9) women on whose behalf the United States is acting, you must decide what damages, if any, are attributable to the Defendants' conduct.

The women on whose behalf the United States seeks monetary damages are as follows:

1. Shana Nester

2. Louise Hurd

3. Angela Way

4. Patricia Kimbrough

5. Sherry Peters

6. Kathleen Anderson

      7.      Amber Brown

      8.      Tina Johnson

The United States is seeking two types of monetary damages on behalf of these women–compensatory damages and punitive damages.  There are different rules that apply to each type of damages.  Consequently, you must consider each type separately.

AUTHORITY:

42 U.S.C. § 3614(d)(1)(B); Int'l Brotherhood of Teamsters v. United States, 431 U.S. 324, 361-62 (1977) (Title VII); Curtis v. Loether, 415 U.S. 189, 197 (1974); Preferred Props. v. Indian River Estates, Inc., 276 F.3d 790, 799 (6th Cir. 2002); United States v. City of Hayward, 36 F.3d 832, 838-40 (9th Cir. 1994); Sec'y, HUD on behalf of Herron v. Blackwell, 908 F.2d 864, 872-73 (11th Cir. 1990); Gore v. Turner, 563 F.2d 159, 164 (5th Cir. 1977); United States v. Matusoff Rental Co., 494 F. Supp. 2d 740, 748-49 (S.D. Ohio 2007); United States v. Rent-America Corp., 734 F. Supp. 474, 481-82 (S.D. Fla. 1990).

**PROPOSED INSTRUCTION NO. 12: COMPENSATORY DAMAGES**

Compensatory damages are awarded to compensate the victims of discrimination for the harm that proximately resulted from the discriminatory conduct.  The purpose of compensatory damages is to make the person injured whole–that is, to compensate fairly the person for the damage that she has suffered.  Compensatory damages are not limited only to the actual loss of time, money, or property that victims may have incurred.  Victims of sex discrimination are also entitled to compensatory damages for the physical injury, pain and suffering, mental anguish, or shock or discomfort that they have suffered because of the Defendants' conduct, as well as other intangible damages for loss of the right to equal housing opportunities afforded by the Fair Housing Act.

You must use sound discretion and common sense in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.


AUTHORITY:

FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS - CIVIL 15.2 (2006) (with modifications); Green v. Century 21, 740 F.2d 460, 464 (6th Cir. 1984); United States v. Matusoff Rental Co., 494 F. Supp. 2d 740, 749 (S.D. Ohio 2007).

### PROPOSED INSTRUCTION NO. 13: COMPENSATORY DAMAGES FOR EMOTIONAL DISTRESS AND OTHER INTANGIBLE INJURIES

One form of compensatory damages is compensation for emotional distress, suffering, or mental anguish.  Emotional distress includes mental suffering caused by painful emotions such as indignation, wounded pride, shame, public humiliation, and despair.

While I said previously that damages must be proved, damages such as emotional distress or mental anguish are not susceptible to an exact determination.  The law does not require that the United States prove the amount of each woman's damages with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.  If you find that one or more of the aggrieved persons suffered emotional distress or mental anguish as a result of the Defendants' conduct, you must do your best to determine what is a fair amount that will compensate each woman for the harm she experienced.

Emotional distress may be inferred from the circumstances as well as established through the testimony of the women who experienced the sexual harassment.  You may conclude on the basis of a woman's testimony alone that she has experienced emotional distress or mental anguish caused by the Defendants' conduct.  In addition, you may conclude on the basis of other witnesses' testimony that a woman experienced emotional distress or mental anguish, or you may infer it from facts in evidence.  It is not necessary for any woman to present evidence of economic loss or medical evidence of mental or physical symptoms in order to receive compensatory damages for emotional distress and mental anguish.

AUTHORITY:  42 U.S.C. § 3614(d); Jenson v. Eleventh Taconite Co., 130 F.3d 1287 (8th Cir. 1997); Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 311 n.14 (1986); Smith v. Wade, 461 U.S. 30, 52 (1983); Curtis v. Loether, 415 U.S. 189, 195 (1974); New Jersey Coal. of

Rooming and Boarding House Owners v. Mayor and Council of Asbury Park, 152 F.3d 217, 222-24 (3d Cir. 1998); Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1046 (5th Cir. 1998); United States v. City of Hayward, 36 F.3d 832, 838-40 (9th Cir. 1994), cert denied, 516 U.S. 813 (1995); Johnson v. Hale, 940 F.2d 1192, 1193-94 (9th Cir. 1991), and 13 F.3d 1351, 1352-54 (9th Cir. 1994); Morgan v. Sec'y of HUD, 985 F.2d 1451, 1459 (10th Cir. 1993); United States v. Balistrieri, 981 F.2d 916, 930-33 (7th Cir. 1992), cert. denied, 510 U.S. 812 (1993);  Sec'y, HUD on behalf of Herron v. Blackwell, 908 F.2d 864, 872-73 (11th Cir. 1990); Green v. Century 21, 740 F.2d 460, 464 (6th Cir. 1984); Marable v. Walker, 704 F.2d 1219, 1220-21 (11th Cir. 1983); Woods-Drake v. Lundy, 667 F.2d 1198, 1202-04 (5th Cir. 1982); Gore v. Turner, 563 F.2d 159, 164 (5th Cir. 1977);  Seaton v. Sky Realty Co., 491 F.2d 634, 636-38 (7th Cir. 1974); Smith v. Sol D. Adler Realty Co., 436 F.2d 344, 351 (7th Cir. 1970); United States v. Matusoff Rental Co., 494 F. Supp. 2d 740, 749 (S.D. Ohio 2007) (stating that out-of-pocket costs are difficult to quantify and prove and noting that "emotional suffering, which cannot be calculated with mathematical precision, constitutes a major component of the harm experienced by [housing discrimination] victims"); accord. Williams v. Trans World Airlines, Inc., 660 F.2d 1267, 1272-73 (8th Cir. 1981) (42 U.S.C. § 1981).

**PROPOSED INSTRUCTION NO. 14: ADDITIONAL FACTORS TO
CONSIDER IN AWARDING EMOTIONAL DISTRESS DAMAGES**

You have heard evidence regarding the personal backgrounds of the victims of Bob
Hurt's alleged conduct.  In assessing compensatory damages for emotional distress the
Defendants are responsible for any damages they caused even if the victims were more
vulnerable to emotional damage than an average person would be.  A person who commits a
wrongful act is liable for damages resulting from any pre-existing mental or physical condition
from which the victim suffered.  In other words, if you find the Defendants' liable, then they are
liable for any harm they caused to a plaintiff even if that person happens to have a fragile psyche.

If the Defendants, however, claim that they did not cause a particular portion of a
victim's emotional distress and that they should not be required to compensate a victim for that
portion of her distress, then the Defendants bear the burden of proving, by a preponderance of
the evidence, which portion they caused, and which portion was caused by other factors.


AUTHORITY

Jenson v. Eveleth Taconite Co., 130 F.3d 1287 (8th Cir. 1997) (collecting cases).
Restatement (Third) of Torts § 31 (Tentative Draft No. 3, April 7, 2003).

## PROPOSED INSTRUCTION NO. 15: PUNITIVE DAMAGES

In addition to compensatory damages, the law permits the jury under certain circumstances to award punitive damages.  Punitive damages may be awarded to punish Defendants for intentional or deliberately reckless misconduct and to serve as an example or warning to others not to engage in such conduct.

If you find that Defendants violated the Fair Housing Act, you must award each victim the compensatory damages that have been proven, including compensatory damages for her emotional distress.  If you find that any of the Defendants' discriminatory acts were motivated by evil motive or intent, or involved reckless or callous indifference to the rights of others, you may, but are not required to, award the woman an additional amount as punitive damages.  Punitive damages are awarded in addition to any compensatory damages to punish the Defendants or to deter the Defendants and others from similar conduct in the future.

Defendants acted with malice, evil motive or intent, or reckless indifference if the United States proved by a preponderance of the evidence either:

    a.       that Defendants knew that sexual harassment violated the law, or

    b.       that Defendants acted with reckless disregard of the law prohibiting sexual harassment in connection with rental housing.

Whether to award one or more women punitive damages and the amount of such damages for each woman are within your sound discretion.

If you assess punitive damages against Defendants Bob Hurt and/or Sue Hurt for more than one woman, the amounts you assess may be the same or they may be different.

AUTHORITY:

Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 534-45 (1999); Smith v. Wade, 461 U.S. 30, 46-56 (1983); Curtis v. Loether, 415 U.S. 189, 195-96 (1974); Preferred Props. v. Indian River Estates, 276 F.3d 790, 799-800 (6th Cir. 2002), cert. denied, 536 U.S. 959 (2002);  Badami v. Flood, 214 F.3d 994, 997 (8th Cir. 2000); Alexander v. Riga, 208 F.3d 419, 430-32 (3rd Cir. 2000), cert. denied, 531 U.S. 1069 (2001); United States v. Big D Enters., 184 F.3d 924, 932 (8th Cir. 1999), cert. denied, 529 U.S. 1018 (2000); United States v. Balistrieri, 981 F.2d 916, 936 (7th Cir. 1992), cert. denied, 510 U.S. 812 (1993); Littlefield v. McGuffey, 954 F.2d 1337, 1348-50 (7th Cir. 1992); Barnier v. Szentmiklosi, 810 F.2d 594, 598 (6th Cir. 1987); Tolliver v. Amici, 800 F.2d 149, 151-52 (7th Cir. 1986); Hamilton v. Svatik, 779 F.2d 383, 389 (7th Cir. 1985); Phillips v. Hunter Trails Cmty. Ass'n, 685 F.2d 184, 191 (7th Cir. 1982); Woods-Drake v. Lundy, 667 F.2d 1198, 1203 n.9 (5th Cir. 1982); United States v. Matusoff Rental Co., 494 F. Supp. 2d 740, 754-55 (S.D. Ohio 2007).

### PROPOSED INSTRUCTION NO. 16: FACTORS TO CONSIDER IN AWARDING PUNITIVE DAMAGES

If you decide to award punitive damages, you may consider the following factors in determining an amount or amounts:

1.  The nature of each Defendant's conduct, and how reprehensible or offensive it was;

2.  The impact of each Defendant's conduct on the individual woman, and how much harm it caused her;

3.  The relationship between the individual woman and each Defendant;

4.  What amount of punitive damages, in addition to the other damages awarded, is needed to punish each Defendant his or her wrongful conduct and to deter both him and others from similar wrongful conduct in the future;

5.  Each Defendant's financial condition;

6.  Whether the defendant's conduct that harmed the victim also caused harm or posed a risk of harm to others; and whether there was any repetition of the wrongful conduct and past conduct of the sort that harmed the victim; and

6.  Any other aggravating or mitigating circumstances shown by the evidence.


AUTHORITY:

Kolstad v. American Dental Ass'n, 527 U.S. 526, 535, 536 (1999); BMW of North America, Inc. v. Gore, 517 U.S. 559, 575 (1996); United States v. Big D Enters., Inc., 184 F.3d 924, 933-34 (8th Cir. 1999), cert. denied, 529 U.S. 1018 (2000); Phillips v. Hunter Trails Cmty. Ass'n, 685 F.2d 184, 191 (7th Cir. 1982).

## II. OBJECTIONS TO THE DEFENDANTS' PROPOSED INSTRUCTIONS

The United States submits the following general objections to the Defendants' proposed jury instructions.  The United States will provide additional objections at the time of the jury-instruction conference.

First, the United States objects to any instruction that states or implies that the United States has the initial burden of persuasion with respect to the statues of limitations applicable to its claims.  Statutes of limitation provide an affirmative defense and the Defendants bear the burden of proof on this issue.  See Motley v. United States, 295 F.3d 820, 822 (8th Cir. 2002)(non-jurisdictional statute of limitation provides an affirmative defense).

Second, the United States' objects to the Defendants' proposed instructions that suggest or state that an offer to exchange sex for rent does not rise to the level of *quid pro quo* harassment.  See *Quigley* v. *Winter*, 598 F.3d 938, 947 (8th Cir. 2010) (holding that a single comment conditioning the return of a security deposit on sex amounted to *quid pro quo* harassment).

Third, the United States objects to any proposed instructions that suggest or state that sexually explicit comments or jokes by a landlord to a tenant cannot, as a matter of law, create an actionable hostile housing environment.  *Id.* (holding that unwanted touching and sexual comments, among other actions, comprise evidence of hostile-environment sexual harassment). Even in the workplace, "[s]poradic use of abusive language, gender-related jokes, and occasional teasing" in more than moderate amounts may rise to the level of actionable harassment. Cf. *Erenberg* v. *Methodist Hosp.*, 357 F.3d 787, 792 (8th Cir. 2004).

Fourth, the United States objects to the Defendants' claim that it is improper to submit instructions that provide examples of conduct, that if proven during the trial, should result in a verdict in the United States' favor. "Though a district court should be careful when including specific examples in jury instructions, such a use of examples is not inherently questionable." *United States* v. *Donna*, 366 Fed. Appx. 441 (3d Cir. 2010) (unpublished). According to the Court of Appeals for the Third Circuit:

> Such examples "may be useful when attempting to explain legal issues to jurors to use concrete examples. After all, the Supreme Court has indicated that "[i]n charging the jury, the trial judge is not limited to instructions of an abstract sort. It is within his province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence [or] by drawing their attention to the part of it which he thinks important."

*Id.* (quoting *Quercia* v. *United States*, 289 U.S. 466, 469 (1933)). It is not, therefore, improper in instructions to reference to the facts of the case at bar.

In addition to these general objections, the United States reserves the right to make specific additional objections to individual proposed instructions during the jury instruction conference.

Respectfully submitted this 5th day of November, 2010,


JANE W. DUKE                                    THOMAS E. PEREZ
United States Attorney                          Assistant Attorney General
                                                Civil Rights Division


                                                /s/ Sean R. Keveney
STACEY E. McCORD                                STEVEN H. ROSENBAUM
Assistant United States Attorney                Chief
AR Bar No. 87114                                REBECCA B. BOND
P.O. Box 1229                                   Deputy Chief
Little Rock, AR 72203                           NICOLE J. DE SARIO
Tel: (501) 340-2630                             ROBIN L. DULL
Fax: (501) 340-2728                             SEAN KEVENEY
                                                Trial Attorneys
                                                United States Department of Justice
                                                Civil Rights Division
                                                Housing and Civil Enforcement Section
                                                950 Pennsylvania Avenue, N.W.
                                                Northwestern Building, 7th Floor
                                                Washington, DC 20530
                                                Tel: (202) 514-4713
                                                Fax: (202) 514-1116
                                                Nicole.DeSario@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 5th day of November, 2010, I served the *United States'
Proposed Jury Instructions* via electronic mail on the following:

TONY L. WILCOX
BRANDON W. LACY
SCOT J. LANCASTER
JEFF O. SCRIBER
WILCOX PARKER HURST
LANCASTER & LACY, PLC
3000 Browns Lane
Jonesboro, AR 72401
*Counsel for Defendants Bobby L. Hurt and Sue R. Hurt*


/s/ Sean R. Keveney
Sean R. Keveney
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Northwestern Building, 7th Floor
Washington, DC 20530
Tel: (202) 514-4713
Fax: (202) 514-1116
Sean.R.Keveney@usdoj.gov